Nathan D. Lapham, Off. Ref.
This uncontested action for annulment of marriage was referred to me by order of Mr. Justice Frederic T. Henry dated September 11, 1957 to hear and determine and the evidence was presented the following day.
The fraud on which plaintiff relies is the premarital statement and promise attributed to the defendant that he desired a large family and would use only the method of birth control accepted by the Roman Catholic Church of which they are members. They were married in November, 1948 and the union was interrupted by three separations, roughly spaced at three-year intervals, 1951, 1954 and 1957. The plaintiff claims that she was induced to return after the first two separations by the promise of her husband to live with her so that children might be born, and that it was not until March of 1957 that he told her he never intended to have a family because it would mean she would have to give up her job and stay home, but that he had expressed his desire for a family to induce her to marry him. In other words, she would have us believe that is the first time she had full knowledge of the fraud.
A woman is to be commended for the exercise of patience and tolerance in an effort to preserve her home and marriage (Doroff v..Doroff, 283 App. Div. 688) but that is not tantamount to closing one’s eyes to realities.
I doubt not this woman had the normal desire for children but I have made a painstaking study of the record and on the evidence as it stands, she has failed to satisfy me that, under the circumstances of this case as outlined by her, defendant’s refusal to so live with her that children might be born is the real and underlying cause of the present application. During all their years together, she says there was only one period of about a month following the first reconciliation when he did not insist on contraceptives, yet she continued to live with him. She testified that, in urging they wait yet a longer time before starting a family, he repeatedly stressed they could not afford to have a child and he wanted her to continue to work. There is not a scintilla of evidence here that, either by his conduct in their intimate relations as husband and wife, or as head of the family charged with the responsibility of support, he ever did one thing to lend substance to his promises so easily given and *431 so persistently disregarded. She testified he does not work half the time and insisted that she keep her job, and that he is presently a confirmed alcoholic. This is not the picture of a man caught in an economic pinch who was striving to extricate himself and put the family on a sounder financial basis that would permit his wife to give up employment outside the home and bear and care for a child. According to plaintiff’s story, there was nothing here that would justify a reasonably prudent wife in believing he intended to fulfill his marital obligations and promises. On the contrary, his every move was at variance with such an intention and declared and reiterated his disinterest in a family. It is beyond comprehension that this continued and persistent course of conduct on the part of the defendant so diametrically opposed to his alleged promises and the obligations implicit in marriage would not have enlightened his wife as to his real purpose and intention. Yet she would have us believe she had to wait until he put into words what his actions had so forcefully proclaimed for over eight years.
In support of this application, counsel for plaintiff cites the Richardson case decided by this Referee in 1951. I stand foursquare behind the principles there enunciated and the following-excerpt impresses me as most pertinent here: “ Certainly a plaintiff’s cry of fraud is not strengthened if he or she has allowed years to elapse before discovering deceit in the initial promise and the later excuses for nonfulfillment of a duty so inextricably a part of marriage as the rearing of a family, or of any promise which was made a condition of consent. In such eases, it takes strong evidence to overcome the suspicion raised by long delay, and the thought that the fraud alleged is but a mask to hide the real cause of dissention and beguile the court into action.” (Richardson v. Richardson, 200 Misc. 778, 785.)
In the following case a bride of six weeks left her husband when he told her he did not intend to have children. He sought her out, convinced her he had reversed his position, persuaded her to return and for another six weeks lulled her by asserting economic reasons for delay which may well have appeared plausible to a reasonably prudent person. Then he reiterated his intention not to have children and she promptly left and instituted an action for annulment. Under those circumstances the court held she should not be penalized for her efforts to maintain the marriage and that such an attempt for six weeks did not constitute acquiescence in the fraud. (Capen v. Capen, 137 N. Y. S. 2d 223.) I am heartily in accord with the wise *432 decision of the court in that case, but the facts there under consideration were a far cry from those at bar where the plaintiff lived some eight years with the defendant whose conduct, according to her own story, belied his words and underscored the emptiness of promises no sooner voiced than dishonored.
Counsel also urges that although plaintiff cohabited with the defendant after the first two separations, she did not cohabit freely and voluntarily because he insisted on the use of contraceptives. With this contention I am not impressed. True, plaintiff now says she protested their use, but the record is devoid of any evidence that her submission all these years was induced by fear or force.
I am satisfied this woman is the victim of an unhappy and unrewarding marriage but, in my opinion, she has failed to sustain her claim of fraud. It would appear she had mistaken her remedy.
The relief prayed for is denied and the complaint dismissed.